2009 ME 128

**Michael C.P. KELLEY**

v.

**Alicia J. SNOW.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 23, 2009.

Decided: Dec. 22, 2009.

Michael C.P. Kelley, Swanville, ME, pro se.

Thomas F. Shehan, Esq., Belfast, ME, for Alicia Snow.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Michael C.P. Kelley appeals from a judgment entered in the District Court (Belfast, *Westcott, J.*) amending the parties' child support and parental rights

and responsibilities order, and awarding Alicia J. Snow sole parental rights for their two children.[1] In addition, Kelley appeals from an order entered in the District Court (*Worth, J.*) denying his motion for the appointment of a guardian ad litem (GAL). Kelley argues, inter alia, that the court erred in its application of the best interest of the child standard, articulated in 19–A M.R.S. § 1653(3) (2008); in denying the appointment of a GAL; and in amending the parental rights and responsibilities order.[2] We affirm the judgments.

## I. CASE HISTORY

[¶ 2] Michael Kelley and Alicia Snow were involved in a romantic relationship and are the biological parents of two daughters. After they separated, Kelley brought this parental rights action.

[¶ 3] In 2006, a Family Law Magistrate (*Kidman, M.*) held a hearing and issued the original parental rights and responsibilities order. That order allocated shared parental rights between the parties, but stated that "[i]n the event the parties are not able to agree, final decision-making is allocated to [Snow]." The order also awarded primary residency to Snow. The 2006 order incorporated a written agreement formulated by the parties, which afforded reasonable rights of contact with the children and stipulated that Kelley would not pay child support.

[¶ 4] After the original order, the parties maintained a cordial relationship and instituted a regular visitation schedule for the children between the two homes. Snow was able to attain a nursing degree and begin a relationship with a new person. Ultimately, however, the situation began to deteriorate between the parties, culminating in a series of miscommunications between Kelley's wife and Snow.

[¶ 5] After a disagreement over a brief trip to Chicago for the children, Kelley filed a motion to enforce the 2006 parental rights order, which he alleged prevented Snow from sending the children out of state without his consent. Snow then filed a motion to modify the 2006 parental rights order, seeking to have the original order clarified. Kelley filed his own motion to modify, asking the court to award him primary residence of the children and final decision-making authority. Kelley also filed a motion for contempt, alleging that Snow had violated the 2006 order by taking the children to visit their grandfather in Chicago.

[¶ 6] Two weeks prior to the scheduled hearing on the post-judgment motions to amend the parental rights order, Kelley filed a motion for the appointment of a guardian ad litem, arguing that a GAL was necessary to determine primary residency. The court (*Worth, J.*) denied the motion, finding that the appointment of a GAL

---

1. The amended parental rights and responsibilities order, the order subject to this appeal, also denied Kelley's motion for contempt and dismissed as moot his motion to enforce the original parental rights and responsibilities order.

2. Kelley also argues in his brief that the court erred in declining to apply the Declaratory Judgments Act to this matter. This argument was not raised to the trial court, and therefore has not been preserved for appeal. *See Conrad v. Swan*, 2008 ME 2, ¶ 16, 940 A.2d 1070,

1076. Furthermore, "the acceptance of jurisdiction over the action for declaratory judgment rests in the sound discretion of the justice, and should be exercised only when the court is convinced that by adjudication a useful purpose will be served." *Cape Elizabeth Sch. Bd. v. Teachers Ass'n*, 435 A.2d 1381, 1383 (Me.1981) (quotation marks omitted); *see also Dodge v. Town of Norridgewock*, 577 A.2d 346, 347 (Me.1990). Kelley's remaining arguments are likewise without merit.

would complicate and delay resolution of the conflicts.

[¶ 7] The court held a hearing on all of the motions on January 14, 2009. After hearing testimony from Kelley, Kelley's wife, Snow, and Snow's father, the court made the following findings of fact, which are supported by the record.

- Kelley's allegation and fear that Snow intends to move out of state with the children is unfounded, and Kelly's ability to determine fact from fiction is questionable.
- Kelley's testimony, in addition to that of his witness, is untrustworthy.
- Kelley is an inflexible parent who makes false allegations that Snow is a witch, and that she practices witchcraft on the children.
- Kelley refuses to take responsibility for his role in this conflict.
- Snow is logical and rational and her abilities "to act as an effective parent are far superior to those of [Kelley]."
- Snow's proposed living arrangement with her boyfriend in Lincolnville would be a stable environment for the children.

[¶ 8] The court next found that there had been a substantial change in circumstances since 2006 warranting a modification of the original parental rights order. The court ordered that Snow have sole parental rights. However, the court provided that if Kelley "does all things necessary and proper to support the children in their move to [Snow's new] home," then the court would consider awarding him shared parental rights at a later date.[3]

[¶ 9] Finally, the court dismissed Kelly's motion for contempt, finding that Snow did not violate the 2006 order by allowing the children to go to Chicago for a brief visit with their grandfather. This appeal followed.

## II. LEGAL ANALYSIS

### A. Guardian Ad Litem Appointment

█ [¶ 10] Kelley argues that the best interests of his children could not be determined by the court without the appointment of a GAL, and it was error for the court to deny his motion.

█ [¶ 11] The trial court, managing the litigation, must be given considerable deference in review of GAL appointment decisions, because the court on the scene can best appreciate whether appointment of a GAL may serve or detract from decision-making regarding the best interests of a child. In some cases, appointment of a GAL will benefit the litigation, providing an independent view of the best interests of the child and reducing the acrimony of the litigation. In other cases, appointment of a GAL may add complication, cost, and delay to already acrimonious litigation, without providing any benefit in evaluation of the best interests of the child or children involved.

█ [¶ 12] Thus, we have held that the decision to appoint a guardian ad litem is left to the discretion of the trial court, which is in a better position than we are to determine whether the present parties to the action can protect the child's interests. *Cyr v. Cyr*, 432 A.2d 793, 798 (Me.1981) (holding that the court could "reasonably have predicted that a guardian ad litem for the children would provide little additional information while substantially increasing the contentiousness of the hearing" and therefore, acted within the permissible

---

**3.** The court also issued a child support order mandating that Kelley pay Snow $26 per week toward the support of the parties' two children and set forth a detailed visitation plan for holidays and vacation time.

range of discretion in denying the motion for appointment of a GAL).

[¶ 13] Here, Kelley's motion to appoint a GAL was not filed until after the matter had been scheduled for hearing. The court specifically found that appointing a GAL at such a late stage in the litigation would only serve to complicate and delay the proceeding. The trial court properly considered the potential delay, which would leave the children in an extended period of uncertainty, and the added costs for the parties, when a trial could develop all the necessary facts. No abuse of discretion is demonstrated in the trial court's denial of the motion to appoint a GAL.

## B. Parental Rights Modification

█ [¶ 14] Kelley argues that the court erred when it awarded sole parental rights to Snow by misapplying the statutory factors of the best interest of the child standard, pursuant to 19–A M.R.S. § 1653(3).

█ [¶ 15] We review an award of sole parental rights for clear error and will only vacate a judgment if no competent evidence exists in the record to support it. *Conrad v. Swan,* 2008 ME 2, ¶ 15, 940 A.2d 1070, 1076; *Rodrigue v. Brewer,* 667 A.2d 605, 606 (Me.1995). Determinations of parental rights and responsibilities are governed by 19–A M.R.S. § 1653 (2008). "The paramount consideration ... when allocating parental rights and responsibilities is the best interests of the child." *Rodrigue,* 667 A.2d at 606. A child's safety and well-being are a court's primary consideration when determining the best interest of children, however, a host of other factors must be considered, including, the child's age, relationship to each of the parents, and living arrangements. 19–A M.R.S. § 1653(3).

[¶ 16] After a review of the record, it is evident that the court's findings are supported by the record as a whole. In its

order, the court considered the parties' abilities to effectively parent, their motivations and ability to work with one another, and the bias and credibility of each of the parties' witnesses. Moreover, the court specifically stated why it did not find the testimony of Kelley and his wife to be credible, including the unsupported allegations that Snow is casting spells on the children, and an unwillingness to take responsibility for conflicts. Finally, the court found that Snow's move to Lincolnville would not harm the children and would provide a stable environment for them.

[¶ 17] Because there is competent evidence in the record to support the court's decision, and it is clear that the court considered the best interests of the children in its award of parental rights, the judgment must be affirmed.

The entry is:

Judgments affirmed.